**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ISABEL DEJESUS,**

    **Plaintiff,**

v.                                        **Case No. 8:13-CV-0097-T-33AEP**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the United**
**States Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

The Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI").

Upon a review of the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memoranda submitted by the parties in this case, and for the reasons set forth herein, I recommend that the Commissioner's decision in this case be **AFFIRMED**.

**I.  Background**

The Plaintiff filed for SSI on December 22, 2009, alleging an onset of disability on October 1, 2009. R. 66, 134-37, 184-5. The Plaintiff's application was denied initially and upon reconsideration. R. 66-67. The Plaintiff requested and received a hearing, which was held on May 4, 2011 before ALJ Tony Eberwein (the "Hearing"). R. 44-63. In a decision dated June 6, 2011 (the "Decision"), the ALJ found the Plaintiff not disabled as defined under the Act. R. 24-

35.  The Plaintiff timely exhausted her administrative remedies, and this case is properly before the Court for review under 42 U.S.C. § 405(g).

## II.  The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-point sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

In his Decision, the ALJ performed the required five-step sequential analysis.  R. 17-28.  At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her application date.  R. 26.  At step two, the ALJ determined that the Plaintiff suffered from the severe impairments of "status-post left nephrectomy due to cancer at age 2, hypertension, herniated nucleus pulposus (HNP) L5-S1 with left leg radiculopathy, left knee pain and C5-6 disc protrusion and anxiety…."  R. 26.  At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 26-27.  Next, the ALJ found that the Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work.  R. 28-33.  At step four, the ALJ determined that the Plaintiff was not capable of performing any past relevant work.  R. 33.  At step five, based on the testimony of a

vocational expert ("VE") at the Hearing, the ALJ found that the Plaintiff was able to perform the requirements of the representative occupations of a office helper, merchandise marker, and production line inspector. R. 34-35. Based on his finding at step five, the ALJ concluded that the Plaintiff was not disabled under the Act. R. 35.

### III. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g). Further, when the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1533, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (noting that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

The Plaintiff challenges the ALJ's Decision on three grounds:

1) The ALJ's RFC determination was unsupported by substantial evidence;

2) The ALJ's credibility determination was unsupported by substantial evidence because the ALJ erred in his analysis of the required factors; and

3) The ALJ erred at step five of the sequential analysis by failing to ask the VE a complete hypothetical question.

For the reasons discussed below, the Court finds that the ALJ's Decision was based on substantial evidence and comported with applicable legal standards.

### A.     The ALJ's RFC Assessment

First, the Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence on record. Specifically, the Plaintiff argues that the ALJ improperly evaluated the medical opinions of her treating and non-examining physicians in determining her functional limitations. The Social Security regulations "establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion." *Belge v. Astrue*, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Under this hierarchy, "the opinions of examining physicians are generally given more weight than non[-]examining physicians; treating physicians receive more weight that non[-]treating physicians; and specialists on issues within their areas of expertise receive more weight than non[-]specialists." *Id*. (internal citations and quotations omitted). When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless "good cause" is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (noting that a treating physician's medical opinion may be discounted when it is not accompanied by objective

4

medical evidence); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d). Such a preference is given to treating sources because they are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). "Good cause" for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Further, "[a]n opinion about whether the claimant is 'disabled' or 'unable to work,' the claimant's residual functional capacity, or the application of vocational factors can never be given controlling weight, even if offered by a treating source, but must be taken into consideration." *Adamo v. Commissioner*, 365 F. App'x 209, 212 (11th Cir. 2010) (citing 20 C.F.R. § 404.1527(e)(1)-(2)).

In his Decision, the ALJ determined that the Plaintiff had the RFC to perform a limited range of light work. R. 28. Specifically, the ALJ found that:

> [The Plaintiff] can occasionally lift/carry up to 20 pounds and frequently lift/carry 10 pounds. The claimant can sit, stand or walk 6 hours in an 8-hour workday. She must be able to alternate between sitting and standing at will. The claimant can occasionally stoop and climb, but cannot squat, kneel or crawl. She cannot perform overhead reaching. Moreover, because of mental restrictions, the claimant is only able to do simple 1-4 step tasks.

R. 28. In support of this finding, the ALJ evaluated the medical opinions of the Plaintiff's treating physician, Jorge J. Leal, M.D., who saw the Plaintiff from December 2009 through December 2010. R. 30-31. The Plaintiff was first evaluated by Dr. Leal on December 17, 2009 for complaints of "pain in her neck that radiates to her head and shoulders and lower back pain

that radiates down to her legs." R. 459. According to the Plaintiff, her "pain [was] aggravated by sitting, standing, walking and physical activity." R. 459. Upon physical examination of the Plaintiff, Dr. Leal found tenderness over the cervical and lumbar spine regions, but otherwise did not observe any other abnormal findings. R. 460. Imaging studies revealed disc protrusion in both the cervical and lumbar spine. R. 460. In terms of treatment, Dr. Leal recommended that the Plaintiff continue taking Lyrica for her pain. R. 460. The Plaintiff next saw Dr. Leal on January 11, 2010 for complaints of pain. R. 714. Progress notes from this appointment, along with subsequent appointments on April 9, 2010 and June 30, 2010, are almost entirely illegible. R. 713-14. The Plaintiff saw Dr. Leal again on August 25, 2010, and Dr. Leal noted that the Plaintiff had high blood pressure. R. 713. Dr. Leal advised the Plaintiff to take her blood pressure medication every morning and noted that her "therapy" is "helping some." R. 713. Dr. Leal's progress notes from October 20, 2010 are mostly illegible. R. 713. The Plaintiff last saw Dr. Leal on December 15, 2010 for complaints of lower back pain following a car accident the previous month. R. 712. Dr. Leal noted that the Plaintiff was getting physical therapy, and the remainder of the progress notes is mostly illegible. R. 712.

In addition to Dr. Leal's progress notes, there are a number of associated "follow-up" questionnaires akin to patient intake forms, which appear to ask the Plaintiff about her symptoms on a given appointment day. For instance, one question asks, "how would *you* describe *your* pain," and yet another asks whether "*you*" smoke. *See* R. 708, 711, 717-18, 721-22, 724, 726-27, 729 (emphasis added). While some of these questions are answered in the third person, it is unclear who filled out these questionnaires, as they were unsigned and not accompanied by objective medical findings. Nevertheless, these questionnaires consistently included notes that

the Plaintiff was unable to perform "heavy housework," but her prescription medication was "working." R. 708, 711, 717-18, 721-22, 724, 726-27, 729.

Dr. Leal also completed two "Medical Verification" forms over the course of the Plaintiff's treatment. R. 939-40. The first form, dated April 22, 2010, identified the diagnoses of lower back pain and neck pain, and Dr. Leal found that the Plaintiff was unable to "work" sitting down or standing up. R. 939. Dr. Leal found that the Plaintiff suffered from no other work-related restrictions, but was nevertheless unable to work "at all." R. 939. Dr. Leal concluded that the Plaintiff's condition was "temporary," but failed to indicate an estimated duration per the form. R. 939. The second form, dated August 30, 2010, contained identical findings, with the exception of noting that the Plaintiff's condition was "permanent" instead of temporary. R. 940.

In his Decision, the ALJ considered and discussed Dr. Leal's treatment notes and medical findings, but ultimately afforded them little weight because they were internally inconsistent and contrary to other evidence on record. Specifically, the ALJ found:

> Despite the fact that Dr. Leal has had a treating relationship with the claimant, his opinions and assessment contrast sharply with his treatment notes wherein he noted on several occasions that claimant could not do heavy work. His physical exams also revealed no significant abnormalities. The claimant reported improvements in her symptoms and that overall, her functional performance had improved. Additionally, his opinion is inconsistent with claimant reported ADL. Dr. Leal's opinions is also inconsistent with unable to work at all and do not support a conclusion that the claimant's impairments were disabling. As a result, his opinions were given little weight.

R. 33. The Plaintiff argues that the ALJ should have afforded Dr. Leal's opinions "greater weight due to the fact that his assessments of [the] Plaintiff's condition came throughout 2010, making his determinations of [the] Plaintiff's actual capabilities most current." (Dkt. No. 13 at 18.) However, the Plaintiff fails to direct the Court to objective medical evidence confirming the extreme limitations imposed by Dr. Leal in his two RFC evaluations. *See Osborn v. Barnhart*,

7

194 F. App'x 654, 661 (11th Cir. 2006) ("As we have held, the burden is on the claimant to prove that he is disabled…."). Further, Dr. Leal's progress notes were either unremarkable or illegible. The ALJ found that Dr. Leal's progress notes revealed generally conservative findings that were inconsistent with his conclusion that the Plaintiff was unable to perform any kind of work. For instance, numerous follow-up questionnaires stated that the Plaintiff was only restricted from performing heavy work, yet Dr. Leal's two RFC evaluations restricted her from performing any work at all. *Compare* R. 708, 711, 717-18, 721-22, 724, 726-27, 729 *to* R. 939-40. Nevertheless, opinions regarding the Plaintiff's ability to work are not "medical opinions" under the Social Security regulations and are never entitled to any special significance. *See* 20 C.F.R. § 404.1527(d)(2)-(3), (e)(1)-(2) (noting that the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner…."). The ALJ also correctly noted that the Plaintiff's "wide range" of activities of daily living did not confirm the severity of Dr. Leal's RFC evaluations. R. 32. The record supports the ALJ's finding that the Plaintiff took care of her personal hygiene, transported her children to and from school, spent time with her children at parks and malls, prepared meals, performed numerous other household chores, and shopped for groceries. R. 32; *see* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms). Thus, the Court finds the ALJ had good cause for rejecting Dr. Leal's RFC findings, as they were unsupported by the medical evidence on record. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

The Plaintiff contends that, if the ALJ felt that Dr. Leal's opinions contained inconsistencies, it was his duty to re-contact Dr. Leal for clarification of these opinions. (Dkt. No. 13 at 18.) A medical source should be re-contacted when the evidence received from that

source is inadequate to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1512(e); § 416.912(e). Social Security Ruling 96-5p requires that an ALJ make "every reasonable effort" to re-contact a medical source for clarification if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner *and the adjudicator cannot ascertain the basis of the opinion from the case record*. *See* SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996) (emphasis added). In evaluating whether it is necessary to remand, the Court is guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (quotations and citations omitted). The likelihood of unfair prejudice may arise if there is an evidentiary gap that "the claimant contends supports [his] allegations of disability." *Id*. at 936 n. 9. Here, the Plaintiff makes no such contention. Instead, the Plaintiff asserts that the ALJ had a duty to re-contact Dr. Leal merely because he identified inconsistencies between his opinions. Contrary to the Plaintiff's argument, the ALJ only needed to re-contact Dr. Leal if "the adjudicator cannot ascertain the basis of the opinion." *See* SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996). In this case, the ALJ found that Dr. Leal did not adequately support his position, specifically finding that his opinion was contradicted by his own findings and other evidence on record. R. 33. In other words, the ALJ found that there was sufficient evidence, both from Dr. Leal's opinions and the record as a whole, to determine that the Plaintiff was not disabled and that Dr. Leal's opinion was not entitled to full weight. *See Shaw v. Astrue*, 392 Fed. App'x 684, 688-89 (11th Cir. 2010) (finding no duty to re-contact the plaintiff's treating physician where the ALJ properly rejected his opinion as conclusory and not supported by his own records). Thus, the ALJ was under no duty to re-contact Dr. Leal.

The Plaintiff also argues that the ALJ erred by affording great weight to the opinions of a number of non-examining physicians. (Dkt. No. 13 at 18-20.) On February 12, 2010, state agency consultant Thomas Renny, D.O., filled out a "Physical Residual Functional Capacity Assessment," which identified functional limitations consistent with the ALJ's RFC assessment. R. 521-28. Dr. Renny noted that MRI data revealed disc protrusions in the cervical and lumbar spine, but the Plaintiff's treating sources did not report any significant functional loss related to these impairments. R. 522. Further, Dr. Renny observed that "[a]ll motor power is 5/5 normal and spinal functions are reported as normal." R. 522. On April 28, 2010, state agency consultant Jesse Palmer, M.D., filled out a "Physical Residual Functional Capacity Assessment," which identified functional limitations that were even less restrictive than those identified by the ALJ in his RFC assessment. R. 568-75. Like Dr. Renny, Dr. Palmer identified mostly normal objective findings and minimal functional loss related to the Plaintiff's alleged impairments. R. 569-70. State agency consultants James Levasseur, Ph.D., and Martha Putney, Ph.D., also evaluated the Plaintiff's mental impairments using the "Psychiatric Review Technique," but found that the Plaintiff did not suffer from a severe mental impairment that caused more than mild symptoms. R. 530-43, 554-67.

In his Decision, the ALJ considered the state agency consultant's opinions as follows:

> As to the opinion evidence, the undersigned gives great weight to the State Agency medical assessments dated February 12, 2010 and April 28, 2010, wherein both doctors opined that the claimant retained the residual functional capacity to perform the physical demands of a light work (Exhibits B-12F and B-18F). The undersigned also gives great weight to the psychological assessments wherein psychologists indicated that the claimant has no severe mental impairments (Exhibits B-14F and B-17F). Their determinations are consistent with the medical evidence of record (SSR 96-2p).

R. 33. The Plaintiff argues that these opinions should not have been given great weight "because none of the doctors personally examined [the] Plaintiff, but rather made determinations of her

10

impairments solely off of the then-available medical reports." (Dkt. No. 13 at 19.) In addition, "[s]ince the medical evidence shows [that the] Plaintiff's impairments got worse between April 2010 and March 2011, it was an error to afford these reports great weight." (Dkt. No. 13 at 20.) In this case, the medical record supported the ALJ's RFC assessment, and the ALJ is not "prohibited from reaching that conclusion simply because non-treating physicians also reached it." *See Forrester v. Commissioner*, 432 F.App'x 899, 902-03 (11th Cir. 2012) (finding that an ALJ did not err in relying on the opinions of non-examining physicians where he properly discounted the opinions of the plaintiff's treating physician). The Plaintiff fails to direct the Court to objective medical evidence that refutes the non-examining physicians' opinions. In addition, while these opinions were issued prior to some subsequent medical records, the ALJ properly considered this additional evidence when formulating his RFC assessment. For instance, the ALJ considered the records of Dr. Raymond A. Petrus, II, D.O., who examined the Plaintiff from November 2010 through February 2011. R. 31, 687-89, 696-706, 805-10. Dr. Petrus first saw the Plaintiff on November 2, 2010 following a November 1, 2010 motor vehicle accident. R. 689-90. Dr. Petrus's primary goal was to "return [the Plaintiff] to her pre-injury state," and by February 4, 2011, Dr. Petrus reported that many of her symptoms had improved and she had reached "maximum medical improvement." R. 806-07. The ALJ also considered the opinions of the Plaintiff's neurologist, Dr. Robert Martinez. R. 31-32, 812-19. Dr. Martinez found that the Plaintiff suffered from a number of neck and back symptoms that were previously noted by her physicians, but otherwise found that the Plaintiff had functional limitations in line with those identified by the ALJ in his RFC assessment. R. 812-19. In evaluating the Plaintiff's neurological functioning, Dr. Martinez found that the Plaintiff was alert, oriented, and intelligent, had normal affect and judgment, had full strength in all of her extremities, and could lift ten

pounds repetitively. R. 817-19. Since the ALJ's RFC assessment was based on substantial evidence on record and she had good cause for rejecting Dr. Leal's opinion, the Court finds that the Plaintiff's first argument is without merit.

### B. The ALJ's Credibility Determination

Next, the Plaintiff argues that the ALJ failed to properly assess the Plaintiff's credibility in conjunction with her subjective complaints. In the Eleventh Circuit, the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The standard also applies to complaints of subjective conditions other than pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In applying the Eleventh Circuit's three-part pain standard, it is within the ALJ's discretion to determine that a plaintiff's claims of pain and other symptoms are not credible. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence."). "But the ALJ's discretionary power to determine the credibility of testimony is limited by [her] obligation to place on the record explicit and adequate reasons for rejecting that testimony." *See id.* at 839 ("If the ALJ refused to credit subjective pain testimony where such testimony is critical, [he] must articulate specific reasons for questioning the claimant's credibility.").

At the Hearing, the Plaintiff testified that she was only able to lift "about five pounds," stand for about an hour, walk for approximately thirty minutes, and sit for ten to twenty minutes at a time. R. 46-47. The Plaintiff also claimed that she must lay down "most of the time" during

12

the day as a result of her pain. R. 58. In his Decision, the ALJ evaluated the Plaintiff's subjective complaints and testimony at the Hearing, but concluded that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [his RFC assessment]." R. 29. In support of this finding, the ALJ noted that the Plaintiff's "allegations regarding the severity of her pain and limitations are not consistent with the objective clinical findings of record." R. 30. The ALJ discussed the medical evidence on record, including Dr. Leal's treatment records, but found that the physical and mental findings of the Plaintiff's physicians did not reveal disabling limitations consistent with the Plaintiff's subjective testimony at the Hearing. R. 29-33. In addition, the ALJ noted the Plaintiff's wide range of activities of daily living despite her allegations of disabling pain. R. 32.

After reviewing the medical record in conjunction with the Plaintiff's testimony at the Hearing, the Court finds that the ALJ's credibility finding was supported by substantial evidence. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The medical opinions in this case contained mostly conservative findings in contrast to the Plaintiff's complaints of disabling pain. In addition, contrary to the Plaintiff's argument, the ALJ did not err by relying, in part, on the inconsistencies between the Plaintiff's subjective complaints and activities of daily living in evaluating the Plaintiff's credibility. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (affirming the ALJ's finding that the plaintiff's subjective symptoms were not disabling where the ALJ "relied on the inconsistencies between [the plaintiff's] descriptions of her diverse daily activities and her claims of infirmity … in light of her ability to drive, provide childcare, bathe and care for herself, exercise, and perform housework."). The Plaintiff fails to direct the Court to any objective findings confirming the severity of her subjective complaints. *Holt v.*

*Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Thus, the Court finds that the Plaintiff's second argument is without merit.

### C. The VE's Hypothetical Question

Finally, the Plaintiff argues that the ALJ erred by failing to pose a complete hypothetical question to the VE at the Hearing. After an ALJ finds that a claimant is unable to return to prior work, as was found in this case, "the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)). An ALJ may satisfy this burden by propounding hypothetical questions to a VE based on the ALJ's assessment of the claimant's RFC. "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). In asking a hypothetical question, an ALJ is not required to use specific wording when describing a claimant's impairments so long as the hypothetical question accurately reflects the claimant's RFC. *See Maffia v. Astrue*, Case No. 5:09-CV-184-OC-GRJ, 2010 WL 3893711 at *7 (M.D. Fla. Sept. 29, 2010).

In this case, the ALJ posed a hypothetical question consistent with his ultimate RFC assessment. The Plaintiff does not present any new arguments in asserting that the ALJ's hypothetical was incomplete. Since the Court has already found that the ALJ's RFC assessment and credibility finding were supported by substantial evidence, the Court finds that the ALJ's hypothetical question properly incorporated all of the Plaintiff's functional imitations and was supported by substantial evidence. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Thus, the Court finds that the Plaintiff's third argument is without merit.

### V. Conclusion

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

1. The Commissioner's final decision in this case be **AFFIRMED**.

2. The Clerk enter judgment accordingly and **CLOSE** the file.

**IT IS SO REPORTED** in Tampa, Florida on January 15, 2014.

ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).

Copies furnished to:

Hon. Virginia M. Hernandez Covington
Counsel of Record